JOHN B. KLUNK v. BLUE PEARL GRANITE COMPANY.

(Filed 10 November, 1915.)

**1. Master and Servant—Proper Tools — Defects — Ordinary Care — Simple Tools.**

The master is required by the exercise of proper care to furnish the servant with suitable tools and appliances, to be used by him in the performance of his work, which he cannot delegate to another and avoid liability for an injury proximately resulting from a defect which should reasonably have been observed; and this principle applies not only to instances of complicated machinery but to simple tools, when it is properly applied.

**2. Same—Negligence—Proximate Cause—Trials—Evidence—Nonsuit.**

In an action to recover damages of a master for his failure to supply the servant with proper tools with which the latter performed his services, there was evidence in plaintiff's behalf tending to show that the servant was required to cut stone with a steel tool called a pitching tool, made by another employee of the defendant from steel bars of inferior grade after they had been used in defendant's machine, and more likely to burst owing to its inferiority when stricken a heavy blow, and that in cutting the stone it was necessary for the servant to place the edge or bit part upon the stone and strike the other end heavy blows with a hammer; the pitching tool burst, causing a splinter of steel to fly off and injure his eye; that the master's attention had previously been called to the inferiority of the steel from which the pitching tools were made; that the tool had been worn to a length of four inches from an original and ordinary length of six or seven inches; that the defective steel was observable while being made into the tool, but not in its use: *Held,* sufficient for the determination of the jury upon the question of defendant's actionable negligence, proximate cause, and the master's exercise of reasonable care in not discovering the defect.

APPEAL by plaintiff from *Justice, J.,* at the Spring Term, 1915, of FORSYTH.

Action to recover damages for personal injury, caused, as the plaintiff alleges, by reason of the failure of the defendant, in whose employment the plaintiff was at work, to furnish him a reasonably safe tool known as a pitching tool with which to cut granite, this being the work at which he was engaged at the time of his injury.

At the conclusion of the evidence his Honor entered judgment of nonsuit upon the ground that there was no evidence of negligence, and the plaintiff excepted and appealed.

*W. T. Wilson and Louis M. Swink for plaintiff.*
*Alexander, Parrish & Körner for defendant.*

ALLEN, J.   "It has become elementary in the doctrine of negligence that the master owes a duty, which he cannot safely neglect, to furnish proper tools and appliances to his servants" (*Avery v. Lumber Co.,* 146 N. C., 595), and "He meets the requirements of the law if in the

selection of machinery and appliances he uses that degree of care which a man of ordinary prudence would use, having regard to his own safety, if he was supplying them for his own personal use." *Marks v. Cotton Mills,* 135 N. C., 290.

"The employee has the right to assume that these duties have been performed (*Jones v. Warehouse Co.,* 137 N. C., 343), and the employer has no right to delegate their performance to another. If he does so, he is 'liable for negligence in respect to such acts and duties as he is required or assumed to perform, without regard to the rank or title of the agent entrusted with their performance. As to such acts the agent occupies the position of the master, and he is liable for the manner in which they are performed.' *Tanner v. Lumber Co.,* 140 N. C., 479; *Bolden v. R. R.,* 123 N. C., 617." *Mercer v. R. R.,* 154 N. C., 404.

In the last case cited the doctrine was applied to simple tools and the distinction between such tools and complicated machinery is discussed and pointed out.

Applying these principles to the evidence, we are of opinion that there is some evidence of negligence which ought to be submitted to a jury.

The plaintiff was an employee of the defendant at the time he was injured and was engaged in cutting granite with a tool known as a pitching tool. These tools are steel bars, about six or seven inches long, having a hand hold at one end and tapering down to a flange or arm at the other end. The flange or arm is used in cutting the stone, and in using it the workman holds the tool in one hand with the flange or arm resting against the stone and strikes the tool with a large hammer.

The plaintiff introduced evidence tending to prove that the defendant had on hand for the purpose of manufacturing tools, steel of three qualities, one good, another known as Harvey steel, and another known as burned steel; that this steel was first manufactured into steel points for use in the surfacing machines of the defendant, and when the points became worn they were manufactured into pitching tools; that the steel known as the Harvey steel and the burned steel were defective and of such inferior quality that a tool made from them would burst when the tool was stricken by a heavy blow; that many of the pitching tools used by the defendant had burst when being used by its employees prior to the time of the plaintiff's injury, and that complaint had been made from time to time to the defendant, notifying the defendant of the defective steel that was being used in the manufacture of its tools; that at the time the plaintiff was injured he was furnished a pitching tool with which to do his work that had been worn until it was only four inches long; that in using it he placed the tool against the stone and struck it two blows, one light and one heavy, and that it then burst, causing pieces of the tool to strike the eye of the plaintiff and to seriously injure him;

that the defect in the tool, caused by the use of the defective steel in its manufacture, could be observed by the workman who manufactured it for the defendant by reason of its expansion by heat, but that it could not be discovered by an employee using it.

One witness testified, "If this pitching tool had been made out of good steel and the manner in which I had sharpened it, it would not have bursted like it did," and another witness: "A low grade of steel is not considered proper to make tools out of. A low grade of steel is not supposed to be used to make hand tools, because in hitting it a blow it will fracture," and, again, this witness was asked, on cross-examination: "If you should find that this tool had been originally seven inches long and was worn down to four inches you would say that was a pretty good tool, wouldn't you?" and he replied: "I would say a piece of steel that had been crystallized down from seven to four inches is in pretty bad shape."

If this evidence is accepted by the jury it meets the requirements of the rule laid down in *Hudson v. R. R.,* 104 N. C., 491, which is approved in *Bradley v. Coal Co.,* 169 N. C., 255, requiring the employee who sues to recover damages resulting from the use of defective machinery furnished by the employer to prove (1) that the machinery was defective; (2) that the defects were the proximate cause of the injury; (3) that the employer had knowledge of the defect or could have discovered the defect by the exercise of ordinary care.

The judgment of nonsuit is set aside and a new trial ordered.

New trial.