R. R. MINCEY v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 19 March, 1913.)

1. Railroads—Master and Servant—Fellow-servant Act—Interpretation of Statutes.

Where two employees of a railroad company were instructed by their superior to do certain work, requiring the use of a ladder, and a ladder which had been discarded by the company is selected from several supplied by the company, which proves defective, the others being sound, and one of the employees sustains a fall because of the defect and receives the injury complained of and sues for damages therefor, Revisal, sec. 2646, known as the Fellow-servant Act, applies, and the plaintiff is not barred of his recovery if it should be established that his fellow-servant, who was his superior, selected the ladder without using reasonable care.

2. Same—Kind of Employment—Scope.

The provisions of the Fellow-servant Act (Revisal, 2646) applying to railroads do not require that the servant, at the time of the injury, should be engaged in the running or operation of a train, but applies to any other kind of service, whether more or less dangerous. *Twiddy v. Lumber Co.*, 154 N. C., 237, cited and approved.

3. Railroads—Master and Servant—Negligence—Duty of Servant—Reasonable Care.

*Held*, in this case, that the court properly charged the jury, upon the question of defendant railroad company's negligence in an action for damages for personal injury received by its employee, that the defendant was not liable for negligence if the danger was so obvious and of such a nature that the servant had equal opportunity as the master to understand and appreciate it, and, being permitted to do the work in his own way, failed in the exercise of reasonable care to avoid the injury.

4. Railroads — Master and Servant — Contract—Implied Promise—
Safe Appliances—Defects—Knowledge of Master—Relative Du-
ties—Ordinary Tools—Damages.

    The duty of the master implied from the contract of hiring,
and which he may not delegate to another so as to avoid re-
sponsibility, is to provide for his servant reasonably safe tools
and appliances, and a safe place to do the work, and to maintain
them in such condition as to afford him reasonable protection
against injury; and if the servant is injured by reason of a de-
fect in an appliance necessary to be used by him in performing
a required service—in this case, a step-ladder—which is known
to the master, and is unknown to the servant and not discover-
able on his examination, while in the exercise of reasonable care,
the master is responsible. The doctrine that it is not the duty
of the master to inspect tools of simple construction, supplied
for the use of the servant, does not apply to the facts of this
case, distinguishing *Mercer v. R. R.*, 154 N. C., 399.

APPEAL by defendant from *Carter, J.,* at September Term,
1912, of PENDER.

Plaintiff, while in the employ of defendant as a carpenter,
was ordered by C. D. Lupo, who was foreman of his squad, to
go with one E. E. Mason and repair a glass door of the paint
shop. In order to do the repair work, it was necessary to use
a ladder. There was evidence that Lupo told Mason to take the
plaintiff with him and do the work. Mason got a ladder, as he
testified, placed it against the side of the house and then climbed
up the ladder and removed the broken panes in the door. Plain-
tiff then ascended the ladder with the new panes of glass, and
when he reached a point near the top, the ladder broke, the
glass dropped from his hands and he fell on the broken pieces
and was seriously cut by them. The court submitted the usual
issues in negligence cases, which were all answered in favor of
the plaintiff, and from a judgment upon the verdict, defendant
appealed.

    *C. D. Weeks and W. P. Mangum Turner for plaintiff.*
    *Davis & Davis, H. L. Stevens, J. T. Bland, and K. O. Bur-
gwin for defendant.*

WALKER, J. In this case there was some evidence to the
effect that the ladder selected by Mason and used by him and

the plaintiff in doing their work was lying in the shop with several others which appeared to be sound and serviceable, while the ladder in question had been broken on one side and spliced, and it was contended by counsel for defendant that where the master has provided an adequate and readily accessible stock of suitable appliances, in good condition, from which the servant may make his own selection, and the imperfection of the one chosen, therefore, was or should have been apparent to the servant who selected it, the master is not responsible for consequent injuries to the servant, whether he made the selection or his fellow-servant, citing Labatt on Master and Servant, sec. 603. But this principle was fairly submitted to the jury by the court, as was the question of contributory negligence, and both were found against the defendant. The defendant relied also upon the general principle, thus stated by Labatt, sec. 333: "When the danger is obvious and of such a nature that it can be appreciated and understood by the servant as well as by the master or by any one else, and when the servant has as good an opportunity as the master, or as any one else, of seeing what the danger is, and is permitted to do his work in his own way, and can avoid the danger by the exercise of reasonable care, the servant cannot recover against the master for injuries received in consequence of the condition of things which constituted the danger. If the servant is injured, it is from his own want of care." See, also, *Whitson v. Wrenn,* 134 N. C., 86; *Covington v. Furniture Co.,* 138 N. C., 374; *Denny v. R. R.,* 130 N. C., 340; *Hicks v. Manufacturing Co.,* 138 N. C., 319; *Taylor v. R. R.,* 109 N. C., 233. This, we think, was also substantially explained to the jury by the court, so far as it was applicable to the case. It must be remembered that these general rules must be somewhat restricted, when the negligence is imputed to a fellow-servant of a railroad employee, because of the Act of 1897, ch. 56, Revisal, sec. 2646, which charges the master, if a railroad company, with liability for the negligence of a coemployee or fellow-servant, as much so as if the delinquent servant had been the *alter ego* or vice-principal, and as such fully represented the master. *Fitzgerald v. R. R.,* 141 N. C., 530. The statute operates alike "on all

employees of the company, whether in superior, equal, or sub-ordinate position." *Ibid.,* p. 534. We have also held that the Act of 1897 applies to an employee of a railroad company, whether at the time of the injury he was engaged in the running or operation of a train or in any other kind of service, whether more or less dangerous. *Sigmon v. R. R.,* 135 N. C., 181; *Mott v. R. R.,* 131 N. C., 234. In the recent case of *Twiddy v. Lumber Co.,* 154 N. C., 237, *Justice Hoke,* for the Court, considers the subject fully and clearly, reviewing all the authorities.

We have examined the charge in this case very carefully, in connection with the evidence, and it appears therefrom to be manifest that the jury decided the case upon the negligence of Mason, whether he be regarded as a vice-principal or simply as a fellow-servant of the plaintiff in performing the work assigned to them by C. D. Lupo, the company's manager in that department of its service. There was ample evidence to support this finding of the jury, and as they have acquitted the plaintiff of any concurring or contributory negligence in producing the injury, the defendant must be held liable to the plaintiff in damages for the imputed wrong of Mason. The ladder which was used by the plaintiff under the direction of Mason, it appears, had been discarded by the company as unfit for use. It was spliced on one side, but that was not the side on which it afterwards broke. Plaintiff examined it and thought it was safe and sound, before he mounted it. We need not inquire whether it was evidence of negligence to leave this ladder with others then in use, as the case was decided on another ground. The duty of the master to provide reasonably safe tools, machinery, and place to work does not go to the extent of a guarantee of safety to the employee, but does require that reasonable care and precaution be taken to secure safety, and this obligation, which is positive and primary, cannot be avoided by a delegation of it to others for its performance. The master's duty, though, is discharged if he does exercise reasonable care in furnishing suitable and adequate machinery and apparatus to the servant, with a reasonably safe place and structures in and about which to perform the work, and in keeping and maintain-

MINCEY *v.* R. R.

ing them in such condition as to afford reasonable protection to the servant against injury. *R. R. v. Herbert,* 116 U. S., 642; *Gardner v. R. R.,* 150 U. S., 349; *R. R. v. Baugh,* 149 U. S., 368; *Steamship Co. v. Merchant,* 133 U. S., 375. This undertaking on the part of the master is implied from the contract of hiring (*Hough v. R. R.,* 100 U. S., 213), and if he fails in the duty of precaution and care, he is responsible for an injury caused by a defect which is known to him and is unknown to the servant. *R. R. v. McDade,* 135 U. S., 554. These principles are fully supported by the following cases in this Court and apply to machinery and tools or implements of simple as well as complicated construction. *Twiddy v. Lumber Co., supra; Reid v. Rees,* 155 N. C., 230 (ladder case); *Orr v. Telephone Co.,* 130 N. C., 627 (*s. c.* on rehearing, 132 N. C., 691); *Avery v. Lumber Co.,* 146 N. C., 595; *Cotton v. R. R.,* 149 N. C., 227; *Marks v. Cotton Mills,* 135 N. C., 287; *West v. Tanning Co.,* 154 N. C., 44; *Nail v. Brown,* 150 N. C., 533, and *Mercer v. R. R.,* 154 N. C., 399 (hammer case), opinion by *Justice Allen;* in which it is held that the duty of inspection of tools and appliances does not extend to those of simple construction, such as hammers, chisels, spades, axes, and others of like kind, where the employee is assumed to have equal knowledge and ability with the master for discovering the defect, if any. He is required to use it and, therefore, is in a better situation to discover the imperfection of the implement and report it to the master for repair or the substitution of a new one. But this relaxation of the rule can have no application to a defect of which the master is actually cognizant, and which, as a reasonable man, he should appreciate is likely to result in injury to one using the implement as it is likely to be used, and which is neither known to the employee nor of such a character as to be apparent from the observation which may be expected to accompany its use. In such case the general rule of negligence is fully effective, and the master who knowingly and negligently exposes his employee to a peril unknown to the latter must respond for the damage which results.

It appears that plaintiff could not discover the defect in the ladder by an ordinary inspection or such as he could have made

in the use of it, but the railroad company knew of its defectiveness and that it was not suitable for the use to which it was to be applied. It must, therefore, answer for the resultant damage. *Stark v. Cooperage Co.,* 127 Wis., 322. The plaintiff actually made a proper examination of the ladder, before he used it, and failed to find anything indicating that it was weak or unsafe, and the jury exonerated him from any blame and naturally enough confined their further investigation to the negligence of Mason. It is true, the rule is that where fellow-servants are engaged in a common employment, each, in undertaking the service, assumes the risk that the others may fail in that care and vigilance which are essential to his safety; and under this rule, if applicable here, the defendant would not be liable; but not so, for the reason that the statute has excepted this class of cases from the general principle. It is too late now to question the policy or wisdom of making the exception in those cases of railroads where the special risk is no greater nor the particular kind of work more dangerous than when it is done in other employments. It may be discriminating and unjust to make the distinction, but such arguments should be addressed to the Legislature and not to us, who do not make the law, but simply construe it or declare what it is. The argument that the statute was not intended to cover cases of this kind is met by the numerous decisions of this Court holding the contrary, and declaring what is the true meaning of the statute. *Twiddy v. Lumber Co., supra.*

We find no error in the case.